**SMITH KRIVOSHEY, PC**
Yeremey O. Krivoshey (State Bar No. 295032)
166 Geary Street, Ste. 1500-1507
San Francisco, CA 94108
Phone: 415-839-7000
E-Mail:  yeremey@skclassactions.com

**SMITH KRIVOSHEY, PC**
Joel D. Smith (State Bar No. 244902)
867 Boylston Street, 5th Floor, Ste. 1520
Boston, MA 02116
Phone: 617-377-7404
E-Mail:  joel@skclassactions.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN BERMUDEZ, individually and on behalf of all others similarly situated,<br><br>                          Plaintiff,<br><br>       v.<br><br>HOME DESIGN INC. and W A CUSHION SDN, BHD,<br><br>                          Defendants. | Case No. 5:24-cv-02376-SSS-SHK<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br><u>JURY TRIAL DEMANDED</u> |

FIRST AMENDED COMPLAINT – JURY TRIAL DEMANDED;
CASE NO. 5:24-CV-02376-SSS-SHK

## **NATURE OF THE ACTION**

1.      This is a class action against Defendant Home Design Inc. ("Home Design") and W A Cushion SDN, BHD ("W A Cushion") for the manufacture, importation, distribution, and sale of upholstered low-profile standard and platform beds, all of which suffered from an identical defect in design. Specifically, the bed frame can collapse, posing a crush hazard that can result in severe injury or death.  A bed frame that poses such a hazard is unreasonably dangerous.  This defect rendered the Products unsuitable for their principal and intended purpose.  Indeed, Defendants "ha[ve] received 128 reports of the beds breaking, sagging or collapsing during use, including **36 injuries**."[1]  The beds have been recalled, and consumers have been instructed to stop using them.

2.      On January 18, 2024, Defendant Home Design and the U.S. Consumer Product Safety Commission ("CPSC") announced a recall of roughly 529,177 beds sold in the United States (the "Products").  Consumers were warned that the Products "can break, sag or collapse during use, posing fall and injury hazards to consumers."[2]  Further, consumers were specifically instructed to "**immediately stop using the recalled beds**."[3]

3.      In other words, this case concerns a defect that Defendant Home Design admitted renders the Products unable to be used for their intended purpose. There is no dispute that a bed that cannot be slept on has no intrinsic value. Indeed, Defendant Home Design has instructed consumers to stop using the Products.

4.      And yet, Defendants refuse to refund customers that purchased the Products.  Instead, Defendants implemented a deficient recall that allows them to

---

[1] https://www.cpsc.gov/Recalls/2024/Home-Design-Recalls-Upholstered-Low-Profile-Standard-and-Platform-Beds-Due-to-Fall-and-Injury-Hazards
[2] *Id.*
[3] *Id.*

*say* they are doing the right thing, when in fact the primary objective is to protect their bottom line.

5.     Any requests for refunds are denied.  A consumer only has one publicly announced option: to contact Defendant Home Design for purported replacement slats and side rails.  But, even this option is illusory.  First, Defendant Home Design claimed that shipping of these parts would take several *months*, meaning that to have any value whatsoever customers would have to find a place to store these large beds for months on end *without using them* on the hope that one day the repair *might* be effective.

6.     Plaintiff appears to be one of the few customers that actually heard of the recall.  On January 19, 2024, the day after the recall was announced, Plaintiff followed the instructions on the recall webpage[4]  to get a repair kit, emailed proof of purchase and photo of the bed, photo of the law label on the back of the headrest, and his name and mailing address.  In the initial email, Plaintiff asked for a refund because, at the time, Defendant's dedicated webpage for the recall stated that Defendant **was providing refunds**.  Specifically, Defendant Home Design's dedicated recall webpage stated:

### What You Should Do:

**Please immediately stop using the recalled beds and contact Home Design Inc. for a free repair kit.**
To register for a refund, please email Home Design, Inc. at recall@homedesign-us.com and provide:

➤  o A photo of the bed or a copy of the proof of purchase
    o A photo of the law label on the back of the headrest
    o Your name and mailing address

Once Home Design, Inc. confirms that you have one of the recalled beds, the company will send you a repair kit free of charge. If you have questions regarding the recall or the assembly of the repair kit, please contact Home Design Inc. toll free at **833-383-2967 Monday through Friday 8 am to 4 pm EDT** or via email at recall@homedesign-us.com

---

[4] The recall webpage contains instructions for customers to receive a repair kit. "Consumers must send an image of the bed and the law label, or proof of purchase, to recall@homedesign-us.com to receive the free repair." https://www.cpsc.gov/Recalls/2024/Home-Design-Recalls-Upholstered-Low-Profile-Standard-and-Platform-Beds-Due-to-Fall-and-Injury-Hazards

FIRST AMENDED COMPLAINT – JURY TRIAL DEMANDED;
CASE NO. 5:24-CV-02376-SSS-SHK                                                    2

7.     Defendant Home Design did not respond for over two months, so Plaintiff followed up on March 25, 2024.  Almost a month later, on April 18, 2024, Defendant responded saying that they are not offering refunds, and, instead, are only providing repair kits.  The next day, on April 19, 2024, Plaintiff responded, "OK send me the repair kit then."

8.     Later on April 19, 2024, Defendant Home Design stated, "In response to the recall, we will be sending you the repair kits.  Please be advised that the estimated time for these parts to arrive is approximately 2 -3 months."

9.     On April 23, 2024, Defendant Home Design emailed Plaintiff stating, "We are pleased to inform you that the repair kits are expected to arrive in the next week, and we will expedite the shipping process as soon as we receive them. You will receive an email with the tracking number once your repair kit has been shipped."

10.     Defendant Home Design's email shows that, despite announcing the recall in January 2024, Defendant had not even started shipping repair kits to affected customers or providing any other compensation three months later in late April 2024.  But, Defendant's failure to provide repair kits goes much further.

11.     As of the filing of the original Complaint, Plaintiff *still* had not received the repair kit.  It took the filing of a federal class action lawsuit to cause Defendant to send out repair kits, if at all.  That means that Defendant likely has kept the proceeds from 529,177 Product sales, costing between $100 to $300 each, for a total of between $50 to $150 million dollars, while 1) instructing the users of the Products that they should immediately stop using them, 2) not offering a single dollar in refunds, and 3) not even sending purported repair kits, or, 4) to the extent that some *fraction of one percent* of Defendant's customers got a repair kit, they received them many months down the road after being unable to use their Products

for many months. A reasonable consumer cannot wait half a year or a full year for a repair kit for a large bedframe that is unusable in the meantime. Such a repair has zero value to a reasonable consumer. Instead, a reasonable consumer in such a situation would throw out the bed frame and buy a new one. If the repair kit then suddenly arrived nearly a year after Defendant instructed customers to stop using the beds, it would have no value as reasonable consumers have long discarded Defendant's Products.

12.    Further, a refusal to offer refunds guarantees that customers who have lost faith in Defendants' products and no longer want to be sleeping on beds that may collapse at any moment are left with no recourse. This approach benefits Defendants by minimizing the cost and burden of the recall.

13.    It has become common practice for U.S. companies that sell small consumer goods to offer refunds as an alternative to repairs or replacements when their products are recalled. This option incentivizes consumers to surrender their dangerous products pursuant to the recall, thereby getting more of the dangerous products out of circulation. In a current CPSC-related recall of biometric gun safes, for example, the manufacturer offers refunds as an alternative to replacement units. Harbor Freight Tools frequently has CPSC-related recalls of its products, and typically—if not always—offers a refund option with its recalls. Defendants could offer refunds too, as shown by the fact that Home Design initially offered to provide them, and then reneged on that promise.

14.    Plaintiff is filing this class action lawsuit to seek all available relief to consumers, to raise awareness that Defendants' Products are a hazard, and to "encourage companies to take greater care in avoiding the production [and sale] of hazardous products in the first place." *Kaupelis v. Harbor Freight Tools USA, Inc.*, 2019 WL 6998661 at *10 (C.D. Cal. Oct. 9, 2019) (quoting *In re Mattel, Inc.*, 588 F. Supp. 2d 1111, 1115-16 (C.D. Cal. 2008)).

**PARTIES**

15.    Plaintiff Martin Bermudez is a Temecula, California resident and may be referred to in this Complaint as the "California Plaintiff."  On or around December 26, 2020, Plaintiff purchased one of Defendant's Products subject to the recall new from Wayfair.com for $125.27 using his VISA credit card.  The bed was delivered to his house in Temecula, California.

16.    Plaintiff experienced the defect at issue in this case, as the bed he purchased collapsed multiple times.  Due to the recall, Plaintiff has stopped using the bed and it provides him no value. At the time of purchase, there were no representations that disclosed or suggested in any way that the Products contained the Defect, which was material to Plaintiff and became a basis of the bargain.  If the Products labeling or packaging had disclosed the Defect, then Plaintiff would not have purchased the Products, or would not have purchased the Products on the same terms.

17.    Before filing this lawsuit, Plaintiff provided proof of purchase to Defendant Home Design, who never denied that the product was covered by the recall.

18.    Defendant Home Design Inc. ("Home Design") is an Indiana corporation with a principal place of business in Silver Lake, Indiana.  Defendant is a distributor/importer who imported the products into the United States and shipped them nationwide, including to California.  Home Design purports to be responsible for the recall, but in fact has not complied with its responsibilities or representations concerning the recall.  Home Design warranted and monitored the performance of all of the subject products.

19.    Defendant W A Cushion SDN, BHD ("W A Cushion"), is a Malaysian company headquartered in Malaysia.  W A Cushion manufactured, warranted, and monitored the performance of all of the subject products.

---

FIRST AMENDED COMPLAINT – JURY TRIAL DEMANDED;
CASE NO. 5:24-CV-02376-SSS-SHK                                              5

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and at least one member of the proposed class is citizen of state different from Defendants.

21.     The amount-in-controversy requirement is satisfied here.  There are approximately 527,177 beds at issue here.  The average price of the beds was $200.  Therefore, the amount in controversy is approximately $105 million, without accounting for punitive damages and attorney's fees (i.e., 527,177 x $200).

22.     This Court has personal jurisdiction over Defendants because their contacts with the forum are continuous and substantial, and Defendants otherwise intentionally availed itself of the laws of this State through the marketing of the Product at issue in California to consumers in California and through sales of the Product in California to consumers in California, so as to render the exercise of jurisdiction by this Court consistent with traditional notions of fair play and substantial justice. A substantial portion of the events giving rise to the claims alleged here occurred in this State.

23.     Defendant Home Design Inc. also waived any defense to personal jurisdiction by not raising the issue in its first motion to dismiss.

24.     Defendant W A Cushion purposefully directed its activities towards this forum.  W A Cushion ships millions of dollars' worth of products into the United States every month, and the top two ports of unlading for those products are Los Angeles and Long Beach, respectively.   The largest market for W A Cushion's products in the United States is in California.  The claims at issue here arise out of or relate to products that Defendant shipped into this forum.

FIRST AMENDED COMPLAINT – JURY TRIAL DEMANDED;
CASE NO. 5:24-CV-02376-SSS-SHK                                        6

25. Both Defendants serve a market for bed frames in California, and the product they manufactured, imported, and distributed caused injury in California.

26. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District and because Defendants engages in continuous and systematic business activities within this District.

## **FACTUAL ALLEGATIONS**

27. **Product at Issue**: The specific bed frames in question are all Home Design Part number 80002 Tufted Upholstered Low Profile Standard Beds, Part number 80032 Tufted Upholstered Low Profile Standard Beds, Part number 80055 Tufted Upholstered Low Profile Standard Beds, Part number 80071 Tufted Upholstered Low Profile Platform Beds, and Part number 80053 Tufted Upholstered Low Profile Platform Beds. Part number 80002 is a gray, warm gray, or blue bed frame with standard supports requiring a box spring, available in twin, full, queen and king size. Part number 80032 is a gray or beige bed frame with standard supports requiring a box spring, available in twin, full, queen and king size. Part number 80055 is a silver gray, gray, or black bed frame with standard supports requiring a box spring, available in king size. Part number 80071 is a gray, beige, or black bed frame with platform supports which does not require a box spring, available in twin, full, queen or king. Part number 80053 is a warm gray bed frame with platform supports which does not require a box spring. Part number 80053 does not have a center support leg halfway along the side rail. The part number is provided in the installation manual and was printed on the packaging. The recalled bed frames have a law label on the back of the headboard. All of the foregoing beds have been recalled pursuant to the January 18, 2024 CPSC recall. The beds were sold at Wayfair, Walmart.com, and Overstock.com from July 2018 through November 2023 for between $100 and $300.

28.    **Defect at Issue:**  As stated by Defendant Home Design: "The recalled beds can break, sag or collapse during use, posing fall and injury hazards to consumers."  The Defect affects all of the Products at issue.  Defendant Home Design and the CPSC have stated that "[c]onsumers should immediately stop using the recalled beds."

29.    **Relevant Time Period:** All of the omissions and misrepresentations at issue here were uniformly and consistently made at all times while the Products were sold between July 2018 and November 2023.  There have been no material changes to the product packaging or other consumer facing materials during the relevant period.

30.    **The Omissions and Misrepresentations:** Defendants sold the Products as upholstered beds.  However, Defendants failed to disclose that the beds "can break, sag or collapse during use, posing fall and injury hazards to consumers."

31.    The omission pertains to an unreasonable safety hazard that reasonable consumers consider to be material.  Defendants have received reports of 36 injuries due to the Defect.

32.    Plaintiff and class members would not have bought the Products, or would not have bought them on the same terms, if the Defect had been disclosed. The materiality of the Defect also is demonstrated by the existence of the recall.

33.    At the time of purchase, Plaintiff and class members did not know and did not have reason to know that the Products were defective. Defendants had exclusive knowledge of that fact.

34.    Defendants made partial representations to Plaintiff and class members, while suppressing the safety defect. Specifically, by displaying the Products and describing their functions and parts, the Products' implied that they

FIRST AMENDED COMPLAINT – JURY TRIAL DEMANDED;
CASE NO. 5:24-CV-02376-SSS-SHK                                                    8

were suitable and safe to use as beds, without disclosing that they had a critical

safety-related defect related to the Products.

35.    **Defendants' Pre-sale Knowledge of the Defect**:  Defendants were

aware of the defect at the time of sale.

36.    Before the products were first launched, Defendants knew about the

defect as a result of pre-release testing.

37.    After launch, Defendants monitored a variety of sources of

information to detect signs of defects. These sources of information include

warranty claim data, customer complaints to Defendants, replacement part data,

field reports, and CPSC correspondence. Defendants know that for every

complaint made, there is a statistical likelihood that there were many more

unreported incidents, and Defendants made projections about the likely

manifestation rate and future warranty claims based on the number of known

complaints.

38.    The customer complaints about the Products also would have put

Defendants on notice of the defect and contributed to their pre-sale knowledge of

the defect, because the defect is the same or substantially similar in all material

respects.  The number of complaints about the Products was unusually high

relative to the total number of products sold.  The fact that so many owners made

similar complaints indicated that the complaints were not the result of user error or

anomalous incidents, but instead a systemic problem with the Products.  The

reports and complaints from customers were similar enough to put Defendants on

notice that the incidents described were the result of a defect, and that the Products

were experiencing unusually high levels of complaints about the defect.  And yet,

Defendants waited until they received 128 formal reports of the defect and **36

reported injuries** before instituting the recall.

39.     Defendants also monitored and would have known about consumer complaints to the CPSC.  When a consumer posts a complaint on the CPSC website, all of the relevant information provided to the CPSC is automatically sent via email to the manufacturer and retailers.  Monitoring complaints to the CPSC is standard industry practice that serves as an early warning mechanism to spot defects that cause safety hazards, and Defendants adhere to that practice.

40.     **Presuit notice**: On June 7, 2024, a class member by the name of Angela Bates served a notice letter via certified mail that complied with all applicable notice requirements, and gave Defendant Home Design notice on behalf of the entire putative class.  Defendant Home Design acknowledged receipt of the letter, and yet continued to not actually provide refunds or repair kits to class members.

41.     On November 1, 2024, Plaintiff Bermudez served another letter on Defendant Home Design via certified mail that complied with all applicable notice requirements, and gave Defendant Home Design notice on behalf of the entire putative class.

42.     **No Adequate Remedy At Law:**  Plaintiff and members of the Class are entitled to equitable relief because no adequate remedy at law exists.

43.     Legal remedies are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief.

44.     Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff fail to sufficiently adduce evidence to support an award of damages.

45.     Damages and restitution are not the same amount.  Unlike damages, restitution is not limited to the amount of money Defendants wrongfully acquired plus the legal rate of interest.  Equitable relief, including restitution, entitles a

FIRST AMENDED COMPLAINT – JURY TRIAL DEMANDED;
CASE NO. 5:24-CV-02376-SSS-SHK                                              10

plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Plaintiff seeks non-restitutionary disgorgement of profits in connection with his unjust enrichment claim.

46.     Legal claims for damages are not equally certain as restitution because equitable claims entail few elements.

47.     In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

48.     **The Recall Does Not Render This Lawsuit Moot:** The recall does not render this lawsuit moot because it does not provide all of the same relief available in this lawsuit.

49.     First, as can be seen with Plaintiff's experience, Defendant Home Design is not honoring the recall, or may only show a willingness to do so upon service of notice by a class member to file a class action lawsuit.  Despite following the instructions provided to class members and submitting all information one day after the recall was announced on January 19, 2024, Plaintiff had still not received a repair kit (or a refund) when this case was filed in November 2024.

50.     As discussed above, the proffered repair kits also come so late (or not at all) as to be valueless, as a reasonable consumer cannot afford to wait for months on end for a putative repair kit to hopefully arrive one day – all the while storing a large bed that they have been instructed to not use.  Reasonable consumers, given the unlikely prospect of ever receiving a repair kit (or, at a minimum not within a reasonable amount of time), would throw out Defendants' defective beds after being told not to use them.

51.     Further, no refunds are provided.

---

FIRST AMENDED COMPLAINT – JURY TRIAL DEMANDED;
CASE NO. 5:24-CV-02376-SSS-SHK                                              11

52.    The CLRA provides that "in no case shall the total award of damages in a class action be less than one thousand dollars ($1,000)." Cal. Civ. Code § 1780(a)(1).  That is more than the provided for under the recall.

53.    The recall was only briefly publicized and in a very limited manner. Therefore, on information and belief, many eligible class members remain unaware of it, and the response rate has been low.  The amount and reach of the publicity concerning the notice of recall was not comparable to the typical notice provided in  a class action.

## CLASS ALLEGATIONS

54.    *Class Definition*: Plaintiff brings this action on behalf all people the following classes and subclasses:

55.    Multi-State Implied Warranty Class: All persons who purchased a subject bed Product for personal, family, or household use: (1) in Alaska, Arkansas, California, Delaware, District of Columbia, Hawaii, Indiana, Kansas, Michigan, Minnesota, Montana, Nevada, New Hampshire, New Jersey, North Dakota, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Texas, Utah, Virginia, or Wyoming within the applicable statute of limitations; or (2) in Colorado or Massachusetts within the applicable statute of limitations.

56.    Multi-State Consumer Protection Class:  All persons who purchased a subject bed Product for personal, family, or household use: (1) in the states of Michigan, Minnesota, or New Jersey within the applicable statute of limitations; (2) in the state Missouri within the applicable statute of limitations; (3) in the states of California, Florida, Massachusetts, or Washington within the applicable statute of limitations; (4) in the states of Illinois and New York within the applicable statute of limitations.

FIRST AMENDED COMPLAINT – JURY TRIAL DEMANDED;
CASE NO. 5:24-CV-02376-SSS-SHK                                      12

57.    <u>California class</u>: all people who purchased or leased a subject bed Products in California.

58.    Each of the above class definitions is a placeholder that "may be altered or amended before final judgment." Fed. Civ. P. 23(c)(1)(C). Subject to additional information obtained through further investigation and discovery, the foregoing class definitions may be expanded or narrowed by amendment or in the motion for class certification, including through the use of multi-state subclasses to account for material differences in state law, if any.

59.    Excluded from the putative classes are Defendants and any entities in which Defendants have a controlling interest, Defendants' agents and employees, the judge to whom this action is assigned, members of the judge's staff, and the judge's immediate family. Also excluded are any claims for personal injury.

60.    **Numerosity.** Members of the Class are so numerous that their individual joinder herein is impracticable. On information and belief, each Class or Subclass includes thousands of consumers. The precise number of Class Members and their identities are unknown to the Plaintiff at this time but may be determined through discovery. Class Members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants or other means.

61.    **Commonality and Predominance.** Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members. Common legal and factual questions include, but are not limited to:

(a)    Whether Defendants knew or should have known of the defect at issue in this case, and if so, when they discovered the defect;

---

FIRST AMENDED COMPLAINT – JURY TRIAL DEMANDED;
CASE NO. 5:24-CV-02376-SSS-SHK                                    13

(b)    Whether knowledge of the defect at issue in this case would be important to a reasonable person, because, among other things, it poses an unreasonable safety hazard;

(c)    Whether Defendants failed to disclose and concealed the existence of the defect from potential customers;

(d)    Whether Defendants' conduct, as alleged herein, violates the consumer protection laws asserted here;

62.    **Typicality.**  Plaintiff's claims are typical of the claims of the Classes in that Plaintiff and the Classes sustained damages as a result of Defendants' uniform wrongful conduct, based upon Defendants' failure to inform Plaintiff and all others similarly situated that the products at issue here can be dangerous.

63.    **Adequacy.**  Plaintiff will fairly and adequately protect the interests of Class members.  Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class.  Plaintiff has no interests that are antagonistic to those of the Class.  Plaintiff has no past or present financial, employment, familial, or other relationship with any of the attorneys in this case that would create a conflict of interest with the proposed class members.

64.    **Superiority.**  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, inter alia, the following reasons: prosecutions of individual actions are economically impractical for members of the Classes; the Classes are readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs, conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

---

FIRST AMENDED COMPLAINT – JURY TRIAL DEMANDED;
CASE NO. 5:24-CV-02376-SSS-SHK                                                    14

65.     Without a class action, Defendants will continue a course of action that will result in further damages to the Plaintiff and Members of the Classes and will likely retain the benefits of their wrongdoing.

## COUNT I
### Violations of California's Unfair Competition Law ("UCL")
### Cal. Bus. & Prof. Code §§ 17200, *et seq.*

66.     Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

67.     Plaintiff brings this cause of action individually and on behalf all other class members.

68.     California Business & Professions Code Section 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

69.     Defendants acted with knowledge and intent.

70.     Plaintiff alleges a claim under the unfair and unlawful prongs of the UCL.

71.     Defendants' conduct also constitutes "unfair" business acts and practices within the meaning of the UCL, in that their conduct was injurious to consumers, offended public policy, and was unethical and unscrupulous. Defendants' violation of consumer protection and unfair competition laws resulted in harm to consumers.

72.     Defendant Home Design's conduct was unfair because it promised that customers could register for a refund, and then reneged on that promise, as alleged above.

73.     Both Defendants' conduct was unfair because they knew or should have known that they were manufacturing and distributing hazardous products and continued to sell them anyway despite knowing about the hazard.

74.     Plaintiff also alleges a violation under the "unlawful" prong of the

---

FIRST AMENDED COMPLAINT – JURY TRIAL DEMANDED;
CASE NO. 5:24-CV-02376-SSS-SHK                                                15

UCL because Defendant's conduct violated consumer protection laws and the common law as set forth herein, including but not limited to the CLRA and Song-Beverly Consumer Warranty Act.

75.    Defendants also violated 16 C.F.R. 1115.4 and 1115.6, which requires every manufacturer and importer, distributor, and retailer of a consumer product to inform the CPSC when they obtain information which reasonably supports the conclusion that the product contains a defect which could create a substantial product hazard, or an unreasonable risk of serious injury.

76.    As a direct and proximate result of Defendants' unfair and deceptive practices, Plaintiff and the other members of the Class have suffered out-of-pocket losses.

77.    Plaintiff and class members have suffered an injury in fact resulting in the loss of money and/or property as a proximate result of the violations of law and wrongful conduct of Defendant alleged herein, and they lack an adequate remedy at law to address the unfair conduct at issue here.

78.    Plaintiff seeks all relief available under the UCL.

## COUNT II
### Violations of California's Consumer Legal Remedies Act ("CLRA")
### Cal. Civ. Code §§ 1750, *et seq.*

79.    Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

80.    Plaintiff brings this cause of action individually and on behalf all other class members.

81.    Each Defendant is a "person" as defined by California Civil Code § 1761(c).

82.    Plaintiff and the other Class members are "consumers" within the meaning of California Civil Code § 1761(d).

83.    For the reasons alleged above, Defendants violated California Civil

Code § 1770(a)(5)(7) and (9).

84.    Plaintiff provided pre-suit notice of the claims asserted under the CLRA, in compliance with all of the CLRA's requirements.

85.    Defendants' unfair and deceptive acts or practices occurred repeatedly in Defendants' trade or business.

86.    Defendants acted with knowledge and intent.

87.    Defendant engaged in conduct that had the tendency or capacity to deceive or confuse reasonable consumers.

88.    With respect to restitution under the CLRA claim, Plaintiff allege in the alternative that they lack an adequate remedy at law for the reasons already alleged above.

89.    As a result of Defendants' misconduct, Plaintiff and other Class members have suffered monetary harm.

90.    As to Defendant Home Design, Plaintiff seeks all relief available under this cause of action.  As to W A Cushion, Plaintiff seeks all relief available under this cause of action except damages.

## <u>COUNT III</u>

**Violation of Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790, *et seq.***

91.    Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

92.    Plaintiff brings this cause of action individually and on behalf all other class members.

93.    The Products are "consumer goods" and Plaintiff and class members are "buyers" within the meaning of Cal. Civ. Code § 1791.

94.    Each Defendant is a "manufacturer," "distributor," and/or "retail seller" under Cal. Civ. Code § 1791.

FIRST AMENDED COMPLAINT – JURY TRIAL DEMANDED;
CASE NO. 5:24-CV-02376-SSS-SHK                                    17

95.     The implied warranty of merchantability included with the sale of each Product means that Defendants warranted that each bed (a) would pass without objection in trade under the contract description; (b) was fit for the ordinary purposes for which the bed would be used; and (c) conformed to the promises or affirmations of fact made on the container or label.

96.     The Products would not pass without objection in the trade because they contain the above-described defect, which also makes them unfit for the ordinary purpose for which they would be used.

97.     The products are not adequately labeled because their labeling fails to disclose the defect and does not advise class members of the existence of the danger prior to experiencing failure firsthand.

98.     The Products were not sold on an "as is" or "with all faults" basis.

99.     Any purported disclaimer of implied warranties was ineffective because it was not conspicuous and not made available to the purchaser before the sale of the product.  Instead, if a disclaimer was made at all, it was buried in an owner's manual, which was tucked away in the product packaging and not made available until after purchase.

100.    Defendants' actions have deprived Plaintiff and class members of the benefit of their bargains and have caused the Products to be worth less than what Plaintiff and other class members paid.

101.    As a direct and proximate result of the breach of implied warranty, class members received goods whose condition substantially impairs their value. Class members have been damaged by the diminished value of their Products.

102.    Under Cal. Civ. Code §§ 1791.1(d) and 1794, Plaintiff and class members are entitled to damages and other legal and equitable relief, including, at their election, the right to revoke acceptance of the Products or the overpayment or diminution in value of their products. They are also entitled to all incidental and

FIRST AMENDED COMPLAINT – JURY TRIAL DEMANDED;
CASE NO. 5:24-CV-02376-SSS-SHK                                        18

consequential damages resulting from the breach, as well as reasonable attorneys' fees and costs.

103.    Defendant Home Design further violated the Song-Beverly Act by warranting in writing that to receive a refund for the defective beds, a customer needed to email the company and provide proof of purchase, a photo of the "law label" on the back of the headrest, and the customer's name and address.

104.    Home Design breached that express warranty by refusing to provide refunds in connection with the recall of its beds.

105.    Defendants further violated section 1793.2 of the Song-Beverly Act, which requires that "every manufacturer of consumer goods sold in [California] and for which the manufacturer has made an express warranty shall" maintain in California service and repair facilities (or authorized independent facilities) close to all areas where its consumer goods are sold to carry out the terms of those warranties.  If a warranted product requires repair, there are three options: (1) the buyer can deliver the product to the service facilities for repairs; (2) the manufacturer will come to the buyer's home to make the repair; or (3) the manufacturer will make arrangements to either pick up the product or pay for shipment of the product to the manufacturer.  None of those things happened in connection with the defective beds at issue here.

106.    Defendant W A Cushion entered into an express warranty with Home Design concerning the products, and Plaintiff and class members were the intended third-party beneficiaries of that warranty.

107.    Plaintiff seeks all relief available under this cause of action.

## COUNT IV
### Breach of Implied Warranty

108.    Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

109.    Plaintiff brings this cause of action individually and on behalf all

FIRST AMENDED COMPLAINT – JURY TRIAL DEMANDED;
CASE NO. 5:24-CV-02376-SSS-SHK                                                      19

other class members.

110.    Defendants, as the designers, manufacturers, marketers, distributors, and/or sellers of the products at issue, impliedly warranted that they would pass without objection in trade under the contract description; was fit for the ordinary purpose for which the products would be used; and conformed to the promises or affirmations of fact made on the container or label.

111.    Defendants breached implied warranties because the products could not pass without objection in the trade under the contract description, they were not adequately labeled because there was no disclosure of the defect at issue; and they are unfit for their ordinary purpose.  As a result, Plaintiff and members of the Classes did not receive the goods as impliedly warranted by Defendants to be merchantable.

112.    Plaintiff and Members of the Classes purchased the products in reliance upon Defendants' skill and judgment and the implied warranties of fitness for the purpose.

113.    The products were defective when it left the exclusive control of Defendants.

114.    Plaintiff and class members did not receive the goods as warranted.

115.    The Products were not sold on an "as is" or "with all faults" basis.

116.    Any purported disclaimer of implied warranties was ineffective because it was not conspicuous and not made available to the purchaser before the sale of the product.  Instead, if a disclaimer was made at all, it was buried in an owner's manual, which was tucked away in the product packaging and not made available until after purchase.

117.    As a direct and proximate cause of Defendantss breach of the implied warranty, Plaintiff and class members have been injured and harmed because: (a) they would not have purchased the products on the same terms if they knew that

the Product was dangerous; and (b) the Product does not have the characteristics, uses, or benefits as promised by Defendants.

118.   Plaintiff seeks all relief available under this cause of action.

## COUNT V

**Breach of Contract**

119.   Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

120.   Plaintiff brings this cause of action individually and on behalf all other class members against Home Design, only.

121.   Home Design entered into a contract when it stated in writing that to receive a refund for the defective beds, a customer needed to email the company and provide proof of purchase, a photo of the "law label" on the back of the headrest, and the customer's name and address.

122.   Home Design breached that contract by refusing to provide refunds in connection with the recall of its beds.

123.   Plaintiff complied with all things the contract required him to do by sending in the required information.

124.   Plaintiff was harmed by Home Design's breach of the contract.

125.   Home Design's breach was not waived by acceptance of a repair kit, because the repair kit was not promptly provided, and was only sent after Plaintiff filed a class action complaint alleging that Home Design had failed to comply with its obligations under the contract or with the recall.

126.   Plaintiff seeks all available relief under this cause of action, including specific performance.

## COUNT VI
**Unjust Enrichment**

127.   Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

FIRST AMENDED COMPLAINT – JURY TRIAL DEMANDED;
CASE NO. 5:24-CV-02376-SSS-SHK                                    21

128.    Plaintiff brings this cause of action individually and on behalf all other class members.

129.    To the extent required, Plaintiff asserts this cause of action in the alternative to legal claims, as permitted by Rule 8.

130.    The unjust enrichment claims are premised on Defendants' pre-sale activities and are unrelated to their post-sale obligations to provide repairs.

131.    Plaintiff and the class members conferred a benefit on Defendants in the form of the gross revenues Defendants derived from the sale of defective products.

132.    Defendants knew of the benefit conferred on it by Plaintiff and the Class Members.

133.    Defendants have been unjustly enriched in retaining the revenues derived from Plaintiff's and the Class Members' purchases of the products, which retention of such revenues under these circumstances is unjust and inequitable because Defendants omitted that the products were dangerous.  This caused injuries to Plaintiff and class members because they would not have purchased the products or would have paid less for them if the true facts concerning the products had been known.

134.    Defendants accepted and retained the benefit in the amount of the gross revenues it derived from sales of the products.

135.    Defendants profited by retaining the benefit under circumstances which would make it unjust for Defendants to retain the benefit.

136.    Plaintiff and the Class Members are, therefore, entitled to restitution in the form of the revenues derived from Defendants' sale of the Products.

137.    As a direct and proximate result of Defendants' actions, Plaintiff and class members have suffered in an amount to be proven at trial.

138.  Putative class members have suffered an injury in fact and have lost money as a result of Defendants' unjust conduct.

139.  Putative class members lack an adequate remedy at law with respect to this claim and are entitled to non-restitutionary disgorgement of the financial profits that Defendants obtained as a result of their unjust conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

a.  For an order certifying the classes alleged in this complaint, and naming Plaintiff as the representatives of those classes;

b.  For an order declaring Defendants' conduct violates the statutes referenced herein;

c.  For an order finding in favor of Plaintiff and class members on all counts asserted herein;

d.  For actual, compensatory, statutory, and/or punitive damages in amounts to be determined by the Court and/or jury;

e.  For prejudgment interest on all amounts awarded;

f.  For an order of restitution and all other forms of equitable monetary relief;

g.  For an order awarding Plaintiff and class members their reasonable attorneys' fees, expenses, and costs of suit.

## **JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all claims so triable.

Dated:  February 6, 2025                    Respectfully submitted,

                                              /s/   Yeremey Krivoshey

                                        **SMITH KRIVOSHEY, PC**
                                        Yeremey O. Krivoshey (State Bar No. 295032)
                                        166 Geary Street, Ste. 1500-1507
                                        San Francisco, CA 94108
                                        Phone: 415-839-7000

FIRST AMENDED COMPLAINT – JURY TRIAL DEMANDED;
CASE NO. 5:24-CV-02376-SSS-SHK                                      23

E-Mail: yeremey@skclassactions.com

**SMITH KRIVOSHEY, PC**
Joel D. Smith (State Bar No. 244902)
867 Boylston Street, 5th Floor, Ste. 1520
Boston, MA 02116
Phone: 617-377-7404
E-Mail:  joel@skclassactions.com

*Attorneys for Plaintiff*

## CLRA Venue Declaration, Civil Code § 1780(c)

I, Yeremey Krivoshey, declare as follows:

1.    I have personal knowledge to the facts stated herein and, if called upon to do so, could competently testify hereto.

2.    I am the attorney for Plaintiff in the above-captioned action.

3.    I submit this declaration in support of the Class Action Complaint, which is based in part on violations of the Consumers Legal Remedies Act, California Civil Code § 1750 *et seq.*

4.    The Class Action Complaint has been filed in the proper place for trial of this action.

5.    It is my understanding that Defendant regularly transacts business in this County, and the acts and omissions giving rise to this action occurred in large part in this County.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.  Executed on February 6, 2025 in Louisville, KY.

By:   /s/ Yeremey Krivoshey

Yeremey Krivoshey